**EXHIBIT A**

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

HELZER GROUP, LLC, a Florida limited
liability company, d/b/a Medconsultants,

      Plaintiff,

v.

ACCURATE ACCREDITATION, LLC, a
Michigan limited liability company;
AHZAM AFZAL, individually; SHAAHID
AFZAL, individually; LISA WHITLATCH,
individually; HAMZA OSTO, individually;
and PARAS PANCHOLI, individually,

      Defendants.

_____/

Case No.

Division

**COMPLAINT**

      Plaintiff, HELZER GROUP, LLC, a Florida limited liability company, d/b/a Medconsultants ("Helzer"), sues defendants, ACCURATE ACCREDITATION, LLC, a Michigan limited liability company ("Accurate"), AHZAM AFZAL, individually ("A. Afzal"), SHAAHID AFZAL, individually ("S. Afzal"), LISA WHITLATCH, individually ("Whitlatch"), HAMZA OSTO, individually ("Osto"), and PARAS PANCHOLI, individually ("Pancholi") and alleges:

      1.    This is an action for damages that exceed $30,000.00, exclusive of interest, costs and attorneys' fees.

      2.    Helzer is a Florida limited liability company authorized and existing under the laws of the State of Florida with its principal place of business in Tampa, Hillsborough County, Florida. Helzer represents producers of products and services in the medical industry and offers such products and services to doctors, medical providers and surgical centers.

3.      Accurate is a Michigan limited liability company, with its registered office located in Southfield, Michigan. Accurate produces a software platform for use by medical providers and surgical centers.

4.      A. Afzal is a resident of the State of Michigan.

5.      S. Afzal is a resident of the State of the State of Illinois.

6.      Whitlatch is a resident of the State of Michigan.

7.      Osto is a resident of the State of Michigan.

8.      Pancholi is a resident of the State of Michigan. A. Afzal, S. Afzal, Whitlatch, Osto and Pancholi are, collectively, referred to as the "Original Members."

9.      On or about September 11, 2019, Helzer and Accurate entered into a Memorandum of Understanding wherein Helzer agreed to represent Accurate and offer the Accurate software to doctors, medical facilities and surgery centers and Accurate agreed to pay and compensate Helzer for its services (the "MOU"). A copy of the MOU is attached hereto as Exhibit A and incorporated herein by this reference.

10.     Accurate conducts business within the State of Florida and all payments and deliverables due and owing under the MOU were due to Helzer in Hillsborough County, Florida. Therefore, this Court has jurisdiction over Accurate pursuant to § 48.193(7) Fla. Stat. (2020).

11.     On October 3, 2019, in satisfaction of one of its obligations under the MOU, Accurate transferred $100,000 of fully vested equity to Helzer pursuant to the Accurate Accreditation LLC Operating Agreement, Amendment 3 ("Amendment 3"), which is signed by and agreed to by each of the Original Members. A copy of Amendment 3 is attached hereto as Exhibit B and incorporated herein by this reference.

12.     On or about May 29, 2020, the Original Members executed a Resolution of the Members of Accurate Accreditation, LLC (the "May Resolution"). A copy of the May Resolution is attached hereto as Exhibit C and incorporated herein by this reference.

13.     Pursuant to the May Resolution, each of the Original Members admit to their misrepresentations in Amendment 3 as to the ownership of Accurate and purport to terminate and rescind the MOU and Amendment 3 based on these misrepresentations.

14.     Amendment 3 and the May Resolution were delivered to Helzer through electronic communications and this Court has jurisdiction over each of the Original Members pursuant to § 48.193(2) Fla. Stat. (2020).

15.     Venue is appropriate in Hillsborough County, Florida, as Accurate failed to make payments and deliverables owed to Helzer and the Original Members committed a tort via electronic communications to Helzer in Tampa, Hillsborough County, Florida.

16.     All conditions precedent to this action have occurred, have been performed or have been waived.

## COUNT I
## BREACH OF CONTRACT
### (Against Accurate)

17.     Helzer realleges paragraphs one (1) through sixteen (16), above.

18.     Helzer fully performed its obligations under the MOU.

19.     Accurate was required to transfer to Helzer $400,000 in fully vested equity over a twelve (12) month period in lieu of salary pursuant to the MOU.

20.     On October 3, 2019, Accurate transferred $100,000 of fully vested equity to Helzer pursuant to Amendment 3 in satisfaction of one of its obligations under the MOU. The fully vested equity was 100,000 of Accurate's ownership units.

3

21.     Accurate was obligated to transfer "another $100,000 of fully vested equity" to Helzer no later than April 3, 2020 pursuant to the MOU. However, despite confirming its commitment, Accurate breached the MOU when it failed to deliver the additional $100,000 of fully vested equity to Helzer.

22.     Accurate committed additional breaches of the MOU by failing to (a) reimburse Helzer for its travel expenses on Accurate's behalf and (b) pay commissions due to Helzer for sales generated by Helzer and the sales representatives Helzer brought to Accurate.

23.     On or about May 29, 2020, Accurate further breached the MOU by terminating and rescinding the MOU and Amendment 3 pursuant to the May Resolution.

24.     As a result of the May Resolution, Accurate further breached the MOU by wrongfully (a) withdrawing the $100,000 of vested equity delivered to Helzer, (b) denying the additional $100,000 of vested equity and (c) denying the final $200,000 of vested equity due to Helzer.

25.     As a result of Accurate's breaches of the MOU, Helzer has suffered damages including, without limitation, the loss of its membership interests in Accurate, lost earnings from other opportunities, unpaid commissions, unreimbursed expenses, costs and attorneys' fees.

WHEREFORE, Helzer requests the Court enter judgment in favor of Helzer and against Accurate for damages, interest, costs and such further relief as the Court deems appropriate.

## COUNT II
## CONTRACT IMPLIED IN FACT
(Against Accurate)

26.     Helzer realleges paragraphs one (1) through through sixteen (16), above.

27.     Accurate requested Helzer provide sales representatives, who would travel and generate sales of Accurate's software on Accurate's behalf.

4

28.    Helzer, with the understanding that it would be provided equity in Accurate in lieu of salary along with commissions and expense reimbursement, provided the services requested by Accurate resulting in new customers who purchased Accurate's products and services.

29.    Accurate knowingly and voluntarily received, utilized and benefited from the services under circumstances fairly raising a presumption that the parties understood and intended that compensation was to be paid.

30.    Accurate failed and refused to compensate Helzer for the services provided by Helzer.

31.    As a result of Accurate's failure to compensate Helzer for the services provided by Helzer, Helzer suffered damages including, without limitation, the loss of its membership interests in Accurate, lost earnings from other opportunities, unpaid commissions, and unreimbursed expenses, costs and attorneys' fees.

WHEREFORE, Helzer requests that the Court enter judgment in favor of Helzer and against Accurate for damages, interest, costs and such other relief as the Court deems appropriate.

### COUNT III
### UNJUST ENRICHMENT/CONTRACT IMPLIED IN LAW
(Against Accurate)

32.    Helzer realleges paragraphs one (1) through sixteen (16), above.

33.    Helzer delivered sales representatives, who traveled and generated business for Accurate, benefitting Accurate. Further, Helzer did not pursue other opportunities because of its commitment to Accurate.

34.    Accurate appreciated the benefit of Helzer's delivery of sales representatives, who traveled and generated business on Accurate's behalf by providing Accurate with new customers who purchased Accurate's products and services.

35.     Accurate knowingly and voluntarily accepted and retained the benefit of the sales representatives and business generation delivered by Helzer under such circumstances that it would be inequitable for Accurate to retain the benefit of such services without paying Helzer the value of the services.

36.     Accurate failed and refused to compensate Helzer.

37.     As a result of Accurate's failure to compensate Helzer for the delivery of sales representatives and new customers, Helzer suffered damages including, without limitation, the loss of its membership interests in Accurate, lost earnings from other opportunities, unpaid commissions, and unreimbursed expenses, costs and attorneys' fees.

WHEREFORE, Helzer requests that the Court enter judgment in favor of Helzer and against Accurate for damages, interest, costs and such other relief as the Court deems appropriate.

**COUNT IV**
**FRAUDULENT MISREPRESENTATION BY THE ORIGINAL MEMBERS**
(Against A. Afzal, S. Afzal, Whitlatch, Osto and Pancholi, individually)

38.     Helzer realleges paragraphs one (1) through sixteen (16), above.

39.     Each of the Original Members executed Amendment 3 in their individual capacity.

40.     Amendment 3 contains material statements of fact including "the Accurate Accreditation "Members" are as follows: Ahzam Afzal, Shaahid Afzal, Hamza Osto, Lisa Whitlatch, and Paras Pancholi" (the "Statement of Ownership").

41.     The Statement of Ownership made by each of the Original Members is a material fact and each of the Original Members fraudulently misrepresented the ownership of Accurate to Helzer in Amendment 3.

42.     Each of the Original Members knew that the Statement of Ownership was false because Accurate had entered into an Accurate Accreditation, LLC, Series Seed Subscription

Agreement adding Dr. John Santa Ana as a member on July 1, 2019 (the "Santa Ana Subscription"), just three months before executing Amendment 3. A copy of the Santa Ana Subscription is attached hereto as <u>Exhibit D</u>.

43.     Each of the Original Members admitted that the Statement of Ownership was false in the May Resolution, which provides "Amendment 3 is not signed by all of the members of the Company as of October 3, 2019; John Santa Ana was a member as of that date, having become a member on or about "July 1, 2019."

44.     The Original Members made the Statement of Ownership to induce Helzer to provide benefits to Accurate under the MOU and so that Helzer would believe the compensation it received was valid and legitimate.

45.     Helzer relied on the Statement of Ownership and provided, *inter alia*, sales representatives, who traveled and generated business on Accurate's behalf by providing Accurate with new customers. Additionally, Helzer suffered expenses that have not been reimbursed by Accurate. Further, Helzer did not pursue other opportunities because of its commitment to Accurate.

46.     The Original Members purported to rescind the MOU and Amendment 3 pursuant to the May Resolution based on the false Statement of Ownership itself.

47.     The Original Members profited by selling the four percent (4%) ownership interests that were otherwise owed to Helzer to two additional new members for the sum of $400,000 pursuant to Accurate Accreditation, LLC, Series Seed Subscription Agreements, one to Arvinder & Simrat Dhillon on October 29, 2019 (the "Dhillon Subscription Agreement") and the second to the Lucia Zamboro Revocable Trust on February 14, 2020 (the "Zamboro Subscription Agreement"). Copies of the Dhillon Subscription Agreement and the Zamboro Subscription Agreement are attached hereto as <u>Composite Exhibit E</u> and incorporated herein by this reference.

48.     As result of the Original Members' fraudulent misrepresentations, Helzer has suffered damages including, without limitation, the loss of its membership interests in Accurate, lost earnings from other opportunities, unpaid commissions, and unreimbursed expenses, costs and attorneys' fees.

WHEREFORE, Helzer requests that the Court enter judgment in favor of Helzer and against A. Afzal, S. Afzal, Whitlatch, Osto and Pancholi, jointly and severally, for damages including all compensatory, special and, following compliance with § 768.72 Fla. Stat. (2020), punitive damages, costs and interest, and grant Helzer all other relief the Court deems appropriate.

## COUNT V
## NEGLIGENT MISREPRESENTATION BY THE ORIGINAL MEMBERS
(Against A. Afzal, S. Afzal, Whitlatch, Osto and Pancholi, individually)

49.     Helzer realleges paragraphs one (1) through sixteen (16), forty-two (42), and forty-seven (47), above.

50.     Each of the Original Members executed Amendment 3 in their individual capacity.

51.     Amendment 3 provides "the Accurate Accreditation "Members" are as follows: Ahzam Afzal, Shaahid Afzal, Hamza Osto, Lisa Whitlatch, and Paras Pancholi" (the "Statement of Ownership").

52.     The Statement of Ownership made by each of the Original Members is a material fact and each of the Original Members negligently misrepresented the ownership of Accurate to Helzer in Amendment 3.

53.     Each of the Original Members knew or should have known that the Statement of Ownership was false, made the misrepresentations without knowledge and in reckless disregard of their truth or falsity, or made the misrepresentations under circumstances in which they ought to

have known of their falsity because Accurate had entered into the Santa Ana Subscription just three months before executing Amendment 3.

54.    Each of the Original Members admitted that the Statement of Ownership was false in the May Resolution, which provides "Amendment 3 is not signed by all of the members of the Company as of October 3, 2019; John Santa Ana was a member as of that date, having become a member on or about "July 1, 2019.""

55.    The Original Members made the Statement of Ownership to induce Helzer to provide benefits to Accurate under the MOU and so that Helzer would believe the compensation it received was valid and legitimate.

56.    Helzer justifiably relied on the Statement of Ownership and provided, *inter alia*, sales representatives, who traveled and generated business on Accurate's behalf by providing Accurate with new customers who purchased Accurate's products and services. Additionally, Helzer suffered expenses that have not been reimbursed by Accurate. Further, Helzer did not pursue other opportunities because of its commitment to Accurate.

57.    The Original Members purported to rescind the MOU and Amendment 3 pursuant to the May Resolution based on the false Statement of Ownership itself.

58.    The Original Members profited by selling the four percent (4%) ownership interests that were otherwise owed to Helzer to two additional new members for the sum of $400,000 pursuant to the Dhillon Subscription Agreement and the Zamboro Subscription Agreement.

59.    As result of the Original Members' negligent misrepresentations and Helzer's justifiable reliance thereon, Helzer has suffered damages including, without limitation, the loss of its membership interests in Accurate, lost earnings from other opportunities, unpaid commissions, and unreimbursed expenses, costs and attorneys' fees.

WHEREFORE, Helzer requests that the Court enter judgment in favor of Helzer and against A. Afzal, S. Afzal, Whitlatch, Osto and Pancholi, jointly and severally, for damages including all compensatory and special damages, costs and interest, and grant Helzer all other relief the Court deems appropriate.

BARNETT, BOLT, KIRKWOOD,
LONG & ROCHE

_____
Michael V. Hargett, Esq.
Florida Bar No. 44097
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
(813) 253-2020 – Telephone
(813) 251-6711 – Facsimile
Primary Email:  mhargett@barnettbolt.com
Secondary Emails:

*Attorneys for Plaintiff*

#1254616

10

# Memorandum Of Understanding

The purpose of this memorandum is to outline key provisions and aspects for the creation of a final agreement between Accurate Accreditation, LLC ("AA") and Helzer Group, LLC d/b/a Medconsultants ("HG") for equity interest in Accurate Accreditation, LLC.

**Intention of the parties:**

Currently, AA has business partners in Accurate Accreditation, LLC. The parties desire to create an agreement that transfers $400,000 of the Members Interest from Accurate Accreditation to Helzer Group, LLC. This transfer is being done in lieu of paying HG any up front salary for the sales and development activities HG shall be responsible for providing AA.

**Particulars of the proposed agreement:**

A. HG is foregoing a salary with AA and in return agrees to transfer HG $400,000 in fully vested equity as set forth in this agreement;
B. AA will transfer $100,000 of fully vested equity within three (3) business days of contract execution;
C. Six (6) months after the execution of the contract, AA will transfer another $100,000 of fully vested equity;
D. Twelve (12) months after execution date of contract, AA will transfer the last $200,000 of fully vested equity.
E. AA will reimburse HG for all expenses related to travel for AA business, which will be submitted monthly to AA via an expense form with all associated receipts;
F. AA will pay HG commissions on a monthly basis for business generated by HG's sales and development activities. The commissions shall be paid at a rate of; relationships of $100 per center per month to HG and $50 per center per month for sales reps HG brings to AA. Sales commissions shall be paid to HG and its associated sales reps so long as an account is active with AA and regardless of the renewal of any sales and development agreement.
G. If AA fails to transfer equity on the dates listed above, accrued commissions referenced in the previous subsections, will be paid out for the duration of the contracts in place.
H. In the event, that HG fails to bring to AA a mutually agreed upon number of accounts via it's efforts and those of sales reps brought to AA during the first 12 months of this agreement; perform the duties associated with recruitment and sales after the twelve (12) month period, AA shall have the right to withdraw the final $200,000 of vested equity that is due to HG. The specifics of the sales expectations and remedies shall be discussed and placed in the final agreement.

Failure to perform definitions will be drawn up in the final agreement.

**Contact Information**
Partner name
Partner representative

Position
Address
Telephone
Fax
E-mail


Helzer Group, LLC dba Medconsultants
Kristy Helzer
President
207 S. Clark Ave
Tampa, FL 33609
(813) 210-2242
(800) 696-0868
Kristy@medconsultants.co



**Accurate Accreditation, LLC**


Name: ___Ahzam Afzal___
Date: ___9-11-19___
Title: ___Managing Partner___


**Helzer Group, LLC dba Medconsultants**


Kristy Helzer
Date: ___9/11/2019___
President
Helzer Group, LLC

# Accurate Accreditation LLC
# OPERATING AGREEMENT
# AMENDMENT 3

THIS LIMITED LIABILITY COMPANY OPERATING AGREEMENT AMENDMENT 3 (the Agreement), effective October 3, 2019, amends the original Operating Agreement dated March 2, 2018.

As of the above date, the Members have formed Accurate Accreditation LLC, a Limited Liability Company named above under the laws of the State of Michigan.  Accordingly, in consideration of the conditions contained herein, they agree as follows to the amendments outlined below:

## 1.1  PRIOR UNDERSTANDINGS

1.1.1   The Accurate Accreditation "Members" are as follows:

**Ahzam Afzal, Shaahid Afzal, Hamza Osto, Lisa Whitlatch, and Paras Pancholi**

1.1.2   The current company valuation is $10,000,000, and there are a total of 10,000,000 units outstanding with a status of issued, or contemplated to be issued.

## 1.2  NEW MEMBER ADDITION

1.2.1   The members hereby unanimously agree to amend the original Operating Agreement to issue 100,000 units (currently valued at $100,000) of Accurate Accreditation LLC to Helzer Group, LLC d/b/a Medconsultants upon the execution of this agreement.

**Signed and agreed upon by the members on October 3, 2019.**

Member: Ahzam Afzal

Signature: _____

Date: 10-3-19

Member: Shaahid Afzal

Signature: _____

Date: 10-03-2019

Member: Hamza Osto

Signature: _____

Date: 10-3-19

Member: Lisa Whitlatch

Signature: _____

Date: 10-3-19

Member: Paras Pancholi

Signature: _____

Date: 10-3-19

Member: Helzer Group, LLC

Signature: Kristy Helzer

Date: 10/3/2019

**RESOLUTION OF THE MEMBERS**

**OF ACCURATE ACCREDITATION, LLC**

The undersigned, being all of the Members of Accurate Accreditation, LLC, a Michigan limited liability company (the "Company"), consent to the following actions effective as of May 29, 2020:

Background

A.   Certain members of the Company signed an Amendment to the Operating Agreement of the Company ("Operating Agreement Amendment 3"), a copy of which is attached, which purports to issue 100,000 membership units to Helzer Group, LLC ("Helzer").

B.   Operating Agreement Amendment 3 is not signed by all of the members of the Company as of October 3, 2019; John Santa Ana was a member on that date, having become a member on or about July 1, 2019.

C.   The purported admission of Helzer as a member was based upon a Memorandum of Understanding dated as of September 11, 2019 (the "MOU"), a copy of which is attached.  The MOU is not signed by all Members of the Company.

D.   Neither the Operating Agreement Amendment 3 nor the MOU have been approved by all Members of the Company as required by the Operating Agreement.

E.   The Members who did not sign these documents have advised the Company that they object to the documents and do not approve them.

Resolution

1.   The undersigned Members of the Company hereby rescind Operating Agreement Amendment 3, and rescind the purported grant of membership units to Helzer.

2.   The undersigned Members of the Company hereby rescind and terminate the MOU, and any claim or right of Helzer to any additional ownership interest in the Company, and any authority to act on its behalf in any manner, whether as a sales representative or otherwise.

3.   The undersigned Members of the Company hereby authorize and direct Lisa Whitlatch to review and make recommendations to the Members regarding any request she may receive from Helzer for payment of commissions to Helzer for sales made prior to the date of this Resolution and/or for reimbursement of expenses incurred by Helzer on behalf of the Company and/or with respect to any other claim Helzer may make in connection with this Resolution.

_____
Shaahid Afzal

_____
Lisa Whitlatch

_____
Arvinder & Sintrat Dhillon

_____
Hamza Osto

_____
John Santa Ana

_____
Lucia Zamorano

_____
Ahzam Afzal

_____
Paras Pancholi

**RESOLUTION OF THE MEMBERS**

**OF ACCURATE ACCREDITATION, LLC**

The undersigned, being all of the Members of Accurate Accreditation, LLC, a Michigan limited liability company (the "Company"), consent to the following actions effective as of May 29, 2020:

<u>Background</u>

A.  Certain members of the Company signed an Amendment to the Operating Agreement of the Company ("Operating Agreement Amendment 3"), a copy of which is attached, which purports to issue 100,000 membership units to Helzer Group, LLC ("Helzer").

B.  Operating Agreement Amendment 3 is not signed by all of the members of the Company as of October 3, 2019; John Santa Ana was a member on that date, having become a member on or about July 1, 2019.

C.  The purported admission of Helzer as a member was based upon a Memorandum of Understanding dated as of September 11, 2019 (the "MOU"), a copy of which is attached.  The MOU is not signed by all Members of the Company.

D.  Neither the Operating Agreement Amendment 3 nor the MOU have been approved by all Members of the Company as required by the Operating Agreement.

E.  The Members who did not sign these documents have advised the Company that they object to the documents and do not approve them.

<u>Resolution</u>

1.  The undersigned Members of the Company hereby rescind Operating Agreement Amendment 3, and rescind the purported grant of membership units to Helzer.

2.  The undersigned Members of the Company hereby rescind and terminate the MOU, and any claim or right of Helzer to any additional ownership interest in the Company, and any authority to act on its behalf in any manner, whether as a sales representative or otherwise.

3.  The undersigned Members of the Company hereby authorize and direct Lisa Whitlatch to review and make recommendations to the Members regarding any request she may receive from Helzer for payment of commissions to Helzer for sales made prior to the date of this Resolution and/or for reimbursement of expenses incurred by Helzer on behalf of the Company and/or with respect to any other claim Helzer may make in connection with this Resolution.

| | |
|---|---|
| _____ | _____ |
| Shaahid Afzal | John Santa Ana |
| | |
| _____ | _____ |
| Lisa Whitlatch | Lucia Zamorano |
| | |
| _____ | _____ |
| Arvinder & Sintrat Dhillon | Ahzam Afzal |
| | |
| _____ | _____ |
| Hamza Osto | Paras Pancholi |

**RESOLUTION OF THE MEMBERS**

**OF ACCURATE ACCREDITATION, LLC**

The undersigned, being all of the Members of Accurate Accreditation, LLC, a Michigan limited liability company (the "Company"), consent to the following actions effective as of May 29, 2020:

Background

A.  Certain members of the Company signed an Amendment to the Operating Agreement of the Company ("Operating Agreement Amendment 3"), a copy of which is attached, which purports to issue 100,000 membership units to Helzer Group, LLC ("Helzer").

B.  Operating Agreement Amendment 3 is not signed by all of the members of the Company as of October 3, 2019; John Santa Ana was a member on that date, having become a member on or about July 1, 2019.

C.  The purported admission of Helzer as a member was based upon a Memorandum of Understanding dated as of September 11, 2019 (the "MOU"), a copy of which is attached. The MOU is not signed by all Members of the Company.

D.  Neither the Operating Agreement Amendment 3 nor the MOU have been approved by all Members of the Company as required by the Operating Agreement.

E.  The Members who did not sign these documents have advised the Company that they object to the documents and do not approve them.

Resolution

1.  The undersigned Members of the Company hereby rescind Operating Agreement Amendment 3, and rescind the purported grant of membership units to Helzer.

2.  The undersigned Members of the Company hereby rescind and terminate the MOU, and any claim or right of Helzer to any additional ownership interest in the Company, and any authority to act on its behalf in any manner, whether as a sales representative or otherwise.

3.  The undersigned Members of the Company hereby authorize and direct Lisa Whitlatch to review and make recommendations to the Members regarding any request she may receive from Helzer for payment of commissions to Helzer for sales made prior to the date of this Resolution and/or for reimbursement of expenses incurred by Helzer on behalf of the Company and/or with respect to any other claim Helzer may make in connection with this Resolution.

| | |
|---|---|
| _____ | _____ |
| Shaahid Afzal | John Santa Ana |
| | |
| _____ | _____ |
| Lisa Whitlatch | Lucia Zamorano |
| | |
| _____ | _____ |
| Arvinder & Sintrat Dhillon | Ahzam Afzal |
| | |
| _____ | _____ |
| Hamza Osto | Paras Pancholi |

**RESOLUTION OF THE MEMBERS**

**OF ACCURATE ACCREDITATION, LLC**

The undersigned, being all of the Members of Accurate Accreditation, LLC, a Michigan limited liability company (the "Company"), consent to the following actions effective as of May 29, 2020:

Background

A.   Certain members of the Company signed an Amendment to the Operating Agreement of the Company ("Operating Agreement Amendment 3"), a copy of which is attached, which purports to issue 100,000 membership units to Helzer Group, LLC ("Helzer").

B.   Operating Agreement Amendment 3 is not signed by all of the members of the Company as of October 3, 2019; John Santa Ana was a member on that date, having become a member on or about July 1, 2019.

C.   The purported admission of Helzer as a member was based upon a Memorandum of Understanding dated as of September 11, 2019 (the "MOU"), a copy of which is attached. The MOU is not signed by all Members of the Company.

D.   Neither the Operating Agreement Amendment 3 nor the MOU have been approved by all Members of the Company as required by the Operating Agreement.

E.   The Members who did not sign these documents have advised the Company that they object to the documents and do not approve them.

Resolution

1.   The undersigned Members of the Company hereby rescind Operating Agreement Amendment 3, and rescind the purported grant of membership units to Helzer.

2.   The undersigned Members of the Company hereby rescind and terminate the MOU, and any claim or right of Helzer to any additional ownership interest in the Company, and any authority to act on its behalf in any manner, whether as a sales representative or otherwise.

3.   The undersigned Members of the Company hereby authorize and direct Lisa Whitlatch to review and make recommendations to the Members regarding any request she may receive from Helzer for payment of commissions to Helzer for sales made prior to the date of this Resolution and/or for reimbursement of expenses incurred by Helzer on behalf of the Company and/or with respect to any other claim Helzer may make in connection with this Resolution.

_____
Shaahid Afzal

_____
Lisa Whitlatch

_____
Arvinder & Sintrat Dhillon

_____
Hamza Osto

_____
John Santa Ana

_____
Lucia Zamorano

_____
Ahzam Afzal

_____
Paras Pancholi

**RESOLUTION OF THE MEMBERS**

**OF ACCURATE ACCREDITATION, LLC**

The undersigned, being all of the Members of Accurate Accreditation, LLC, a Michigan limited liability company (the "Company"), consent to the following actions effective as of May 29, 2020:

Background

A.   Certain members of the Company signed an Amendment to the Operating Agreement of the Company ("Operating Agreement Amendment 3"), a copy of which is attached, which purports to issue 100,000 membership units to Helzer Group, LLC ("Helzer").

B.   Operating Agreement Amendment 3 is not signed by all of the members of the Company as of October 3, 2019; John Santa Ana was a member on that date, having become a member on or about July 1, 2019.

C.   The purported admission of Helzer as a member was based upon a Memorandum of Understanding dated as of September 11, 2019 (the "MOU"), a copy of which is attached.  The MOU is not signed by all Members of the Company.

D.   Neither the Operating Agreement Amendment 3 nor the MOU have been approved by all Members of the Company as required by the Operating Agreement.

E.   The Members who did not sign these documents have advised the Company that they object to the documents and do not approve them.

Resolution

1.   The undersigned Members of the Company hereby rescind Operating Agreement Amendment 3, and rescind the purported grant of membership units to Helzer.

2.   The undersigned Members of the Company hereby rescind and terminate the MOU, and any claim or right of Helzer to any additional ownership interest in the Company, and any authority to act on its behalf in any manner, whether as a sales representative or otherwise.

3.   The undersigned Members of the Company hereby authorize and direct Lisa Whitlatch to review and make recommendations to the Members regarding any request she may receive from Helzer for payment of commissions to Helzer for sales made prior to the date of this Resolution and/or for reimbursement of expenses incurred by Helzer on behalf of the Company and/or with respect to any other claim Helzer may make in connection with this Resolution.


_____          _____
Shaahid Afzal                                     John Santa Ana


_____          _____
Lisa Whitlatch                                    Lucia Zamorano

_Arvinder Dhillon_ ▮▮▮▮▮                          _____
Arvinder & Sintrat Dhillon                        Ahzam Afzal


_____          _____
Hamza Osto                                       Paras Pancholi

## RESOLUTION OF THE MEMBERS

## OF ACCURATE ACCREDITATION, LLC

The undersigned, being all of the Members of Accurate Accreditation, LLC, a Michigan limited liability company (the "Company"), consent to the following actions effective as of May 29, 2020:

### Background

A.  Certain members of the Company signed an Amendment to the Operating Agreement of the Company ("Operating Agreement Amendment 3"), a copy of which is attached, which purports to issue 100,000 membership units to Helzer Group, LLC ("Helzer").

B.  Operating Agreement Amendment 3 is not signed by all of the members of the Company as of October 3, 2019; John Santa Ana was a member on that date, having become a member on or about July 1, 2019.

C.  The purported admission of Helzer as a member was based upon a Memorandum of Understanding dated as of September 11, 2019 (the "MOU"), a copy of which is attached. The MOU is not signed by all Members of the Company.

D.  Neither the Operating Agreement Amendment 3 nor the MOU have been approved by all Members of the Company as required by the Operating Agreement.

E.  The Members who did not sign these documents have advised the Company that they object to the documents and do not approve them.

### Resolution

1.  The undersigned Members of the Company hereby rescind Operating Agreement Amendment 3, and rescind the purported grant of membership units to Helzer.

2.  The undersigned Members of the Company hereby rescind and terminate the MOU, and any claim or right of Helzer to any additional ownership interest in the Company, and any authority to act on its behalf in any manner, whether as a sales representative or otherwise.

3.  The undersigned Members of the Company hereby authorize and direct Lisa Whitlatch to review and make recommendations to the Members regarding any request she may receive from Helzer for payment of commissions to Helzer for sales made prior to the date of this Resolution and/or for reimbursement of expenses incurred by Helzer on behalf of the Company and/or with respect to any other claim Helzer may make in connection with this Resolution.

_____          _____
Shaahid Afzal                                                John Santa Ana


_____          _____
Lisa Whitlatch                                               Lucia Zamorano


_____          _____
Arvinder & Sintrat Dhillon                        Ahzam Afzal


_____          _____
Hamza Osto                                                   Paras Pancholi

## RESOLUTION OF THE MEMBERS

## OF ACCURATE ACCREDITATION, LLC

The undersigned, being all of the Members of Accurate Accreditation, LLC, a Michigan limited liability company (the "Company"), consent to the following actions effective as of May 29, 2020:

### Background

A. Certain members of the Company signed an Amendment to the Operating Agreement of the Company ("Operating Agreement Amendment 3"), a copy of which is attached, which purports to issue 100,000 membership units to Helzer Group, LLC ("Helzer").

B. Operating Agreement Amendment 3 is not signed by all of the members of the Company as of October 3, 2019; John Santa Ana was a member on that date, having become a member on or about July 1, 2019.

C. The purported admission of Helzer as a member was based upon a Memorandum of Understanding dated as of September 11, 2019 (the "MOU"), a copy of which is attached. The MOU is not signed by all Members of the Company.

D. Neither the Operating Agreement Amendment 3 nor the MOU have been approved by all Members of the Company as required by the Operating Agreement.

E. The Members who did not sign these documents have advised the Company that they object to the documents and do not approve them.

### Resolution

1. The undersigned Members of the Company hereby rescind Operating Agreement Amendment 3, and rescind the purported grant of membership units to Helzer.

2. The undersigned Members of the Company hereby rescind and terminate the MOU, and any claim or right of Helzer to any additional ownership interest in the Company, and any authority to act on its behalf in any manner, whether as a sales representative or otherwise.

3. The undersigned Members of the Company hereby authorize and direct Lisa Whitlatch to review and make recommendations to the Members regarding any request she may receive from Helzer for payment of commissions to Helzer for sales made prior to the date of this Resolution and/or for reimbursement of expenses incurred by Helzer on behalf of the Company and/or with respect to any other claim Helzer may make in connection with this Resolution.

| | |
|---|---|
| _____ | _____ |
| Shaahid Afzal | John Santa Ana |
| | |
| _____ | _____ |
| Lisa Whitlatch | Lucia Zamorano |
| | |
| _____ | _____ |
| Arvinder & Sintrat Dhillon | Ahzam Afzal |
| | |
| _____ | _____ |
| Hamza Osto | Paras Pancholi |

# Memorandum Of Understanding

The purpose of this memorandum is to outline key provisions and aspects for the creation of a final agreement between Accurate Accreditation, LLC ("AA") and Helzer Group, LLC d/b/a Medconsultants ("HG") for equity interest in Accurate Accreditation, LLC.

**Intention of the parties:**

Currently, AA has business partners in Accurate Accreditation, LLC. The parties desire to create an agreement that transfers $400,000 of the Members Interest from Accurate Accreditation to Helzer Group, LLC. This transfer is being done in lieu of paying HG any up front salary for the sales and development activities HG shall be responsible for providing AA.

**Particulars of the proposed agreement:**

A. HG is foregoing a salary with AA and in return agrees to transfer HG $400,000 in fully vested equity as set forth in this agreement;

B. AA will transfer $100,000 of fully vested equity within three (3) business days of contract execution;

C. Six (6) months after the execution of the contract, AA will transfer another $100,000 of fully vested equity;

D. Twelve (12) months after execution date of contract, AA will transfer the last $200,000 of fully vested equity.

E. AA will reimburse HG for all expenses related to travel for AA business, which will be submitted monthly to AA via an expense form with all associated receipts;

F. AA will pay HG commissions on a monthly basis for business generated by HG's sales and development activities. The commissions shall be paid at a rate of; relationships of $100 per center per month to HG and $50 per center per month for sales reps HG brings to AA. Sales commissions shall be paid to HG and its associated sales reps so long as an account is active with AA and regardless of the renewal of any sales and development agreement.

G. If AA fails to transfer equity on the dates listed above, accrued commissions referenced in the previous subsections, will be paid out for the duration of the contracts in place.

H. In the event, that HG fails to bring to AA a mutually agreed upon number of accounts via it's efforts and those of sales reps brought to AA during the first 12 months of this agreement; perform the duties associated with recruitment and sales after the twelve (12) month period, AA shall have the right to withdraw the final $200,000 of vested equity that is due to HG. The specifics of the sales expectations and remedies shall be discussed and placed in the final agreement.

Failure to perform definitions will be drawn up in the final agreement.

**Contact Information**
Partner name
Partner representative

Position
Address
Telephone
Fax
E-mail


Helzer Group, LLC dba Medconsultants
Kristy Helzer
President
207 S. Clark Ave
Tampa, FL 33609
(813) 210-2242
(800) 696-0868
Kristy@medconsultants.co


**Accurate Accreditation, LLC**


Name: ___Ahzam Afzal___
Date: ___9-11-19___
Title: ___Managing Partner___


**Helzer Group, LLC dba Medconsultants**


Kristy Helzer
Date: _____
President
Helzer Group, LLC

# Accurate Accreditation LLC
## OPERATING AGREEMENT
### AMENDMENT 3

THIS LIMITED LIABILITY COMPANY OPERATING AGREEMENT AMENDMENT 3 (the Agreement), effective October 3, 2019, amends the original Operating Agreement dated March 2, 2018.

As of the above date, the Members have formed Accurate Accreditation LLC, a Limited Liability Company named above under the laws of the State of Michigan.  Accordingly, in consideration of the conditions contained herein, they agree as follows to the amendments outlined below:

**1.1  PRIOR UNDERSTANDINGS**

    **1.1.1**   The Accurate Accreditation "Members" are as follows:

        **Ahzam Afzal, Shaahid Afzal, Hamza Osto, Lisa Whitlatch, and Paras Pancholi**

    **1.1.2**   The current company valuation is $10,000,000, and there are a total of 10,000,000 units outstanding with a status of issued, or contemplated to be issued.

**1.2  NEW MEMBER ADDITION**

    **1.2.1**   The members hereby unanimously agree to amend the original Operating Agreement to issue 100,000 units (currently valued at $100,000) of Accurate Accreditation LLC to Helzer Group, LLC d/b/a Medconsultants upon the execution of this agreement.

**Signed and agreed upon by the members on October 3, 2019.**

Member: Ahzam Afzal

Signature: _____

Date: 10-3-19

Member: Shaahid Afzal

Signature: _____

Date:  10-03-2019

Member: Hamza Osto

Signature: _____

Date: 10-3-19

Member: Lisa Whitlatch

Signature: _____

Date: 10-3-19

Member: Paras Pancholi

Signature: _____

Date: 10-3-19

Member: Helzer Group, LLC

Signature: _____

Date: 10/3/2019

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

THIS SUBSCRIPTION AGREEMENT (this "**Agreement**") is entered into by and between ACCURATE ACCREDITATION, LLC, a Michigan limited liability company (the "**Company**"), and the undersigned Subscriber in the Company ("**Subscriber**") as of June 26, 2019. All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to in the Operating Agreement provided herewith by and among the Managers and the Members identified therein (the "**Operating Agreement**").

WHEREAS, the Company has been formed as a limited liability company under the laws of the State of Michigan;

WHEREAS, the existing Members and the Managers have set out fully in the Operating Agreement their respective rights, obligations and duties with respect to the Company and its assets; and

WHEREAS, Subscriber wishes to purchase from the Company, and the Company wishes to issue to Subscriber, membership interests in the Company in the form of a number of Series Seed units, each represented by a capital commitment in the amount of $1.00 (a "**Unit**");

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained in this Agreement, the parties agree as follows:

**1. Subscription for Units.**

1.1 <u>Agreement to Sell and Purchase.</u> Subscriber hereby agrees to purchase from the Company, and the Company hereby agrees to issue and sell to Subscriber, subject to Section 2.2 (Rejection of Subscription) of this Agreement, the number of Units set forth below Subscriber's signature on the signature page hereto (the "**Purchased Units**"), all subject to the terms and conditions set forth in this Agreement.

1.2 <u>Consideration.</u> In consideration of the issuance and sale of the Purchased Units, Subscriber agrees to disburse an amount equivalent to $1.00 times the number of Purchased Units.

**2. Closing.**

2.1 <u>Closing Date.</u> The Closing of the purchase and sale of the Units shall occur at a time, date, and place designated by the Company; However, in no event shall the Closing occur more than 90 days after the execution of this Agreement.

2.2 <u>Rejection of Subscription.</u> At or before the Closing, the Company may, in its sole discretion and for any reason, elect not to accept the subscription of Subscriber, in whole or in part. If the Company rejects such subscription, the Company shall refund to Subscriber all funds submitted by Subscriber to the Company in connection with such rejected subscription.

2.3 <u>Default.</u> If Subscriber fails to perform Subscriber's obligations hereunder within five days after receipt of notice by the Company to Subscriber of such failure, the Company may, at

1

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

its sole option: (a) if such failure occurs prior to the Closing, refuse to issue the Purchased Units to Subscriber; or (b) if such failure occurs after the Closing, result in the reversion of all rights, title and interest in the Units to the Company and a rescission of the transactions contemplated hereby.

2.4 <u>Failure of Closing to Occur.</u> The Company shall have no liability to Subscriber for (a) the failure of the Closing to occur or (b) its failure to issue the Purchased Units to Subscriber.

2.5 <u>Obligations of Subscriber.</u> At the Closing, Subscriber shall execute the Operating Agreement and such other documents as are deemed by the Company to be appropriate, advisable or necessary to consummate the transactions contemplated hereby and thereby.

2.6 <u>Subscription Irrevocable.</u> Except as provided under applicable state securities laws, this subscription is and shall be irrevocable on the part of Subscriber.

**3. Representation and Warranties of Subscriber.**

Subscriber hereby represents and warrants to the Company as follows:

3.1 <u>No Conflicts.</u> The execution and delivery of this Agreement do not, and the consummation of the transactions contemplated hereby will not, violate any terms of any material contractual restriction or commitment of any kind or character to which Subscriber is a party or by which Subscriber is bound.

3.2 <u>Risk of Loss.</u> Subscriber is able to bear the substantial economic risks of an investment in the Company and to sustain a complete loss of such investment. Subscriber recognizes that the acquisition of the Purchased Units involves a high degree of risk. Subscriber is cognizant of and understands all of the risks related to the purchase of the Units, including those set forth in Section 3.7 (Restrictions on Transfer) of this Agreement pertaining to transferability. Subscriber has adequate net worth and means of providing for Subscriber's current needs and possible personal contingencies and has no need for liquidity in this investment. Subscriber's commitment to investments which are not readily marketable is not disproportionate to Subscriber's net worth and Subscriber's acquisition of the Purchased Units will not cause Subscriber's overall commitment to such investments to become excessive.

3.3 <u>Access.</u> Subscriber acknowledges that all documents, records and books pertaining to this investment have been made available for inspection by Subscriber, Subsrciber's counsel, and Subsrcriber's accountants. Counsel and accountants for Subscriber, and Subscriber, have had the opportunity to obtain any additional information necessary to verify the accuracy of the contents of the documents presented to them, and to confer with and to ask questions of, and receive answers from, representatives of the Company or persons authorized to act on its behalf concerning the terms and conditions of this investment and any additional information requested by Subscriber or Subscriber's representatives. In evaluating the suitability of this investment in the Company, Subscriber has not relied upon any representations or other information (whether oral or written) other than as set forth in any documents or answers to questions furnished by the Company. Subscriber is making this investment without being furnished any offering literature other than the documents or answers to questions described above.

2

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

3.4 <u>Investment Intent.</u> The Purchased Units are being acquired by Subscriber for the account of Subscriber, for investment purposes only, and not with a view to, or in connection with, any resale or distribution thereof. Subscriber has no contract, undertaking, understanding, agreement or arrangement, formal or informal with any person or entity to sell, transfer or pledge to any person or entity all or any part of the Purchased Units, any interest therein or any rights thereto, and Subscriber has no present plans to enter into any such contract, undertaking, agreement or arrangement.

3.5 <u>Reliance on Representations.</u> Subscriber understands that no federal or state agency has passed on or made any recommendation or endorsement of the Units. Subscriber further understands that the Company, in offering the Purchased Units for sale to Subscriber, is relying on the truth and accuracy of the representations, declarations, and warranties made by Subscriber herein and in the investor suitability questionnaire completed, executed and delivered by Subscriber to the Company contemporaneously herewith.

3.6 <u>No Registration.</u> Subscriber acknowledges that, because the Units have not been registered under the Securities Act of 1933 (the "**Securities Act**"), and because the Company has no obligation to effect such registration, Subscriber shall continue to bear the economic risk of Subscriber's investment in the Purchased Units for an indefinite period.

3.7 <u>Restrictions on Transfer.</u> Subscriber agrees that Subscriber will not sell or otherwise transfer, or cause to be sold or transferred, the Purchased Units other than in accordance with the terms and conditions of the Operating Agreement. It is understood that the Units cannot be liquidated easily, that no public or other market exists for the Units, and that no such market is expected to develop. Subscriber is aware that, because the Purchased Units have not been registered under the Securities Act or applicable state securities laws, any resale inconsistent with the Securities Act or applicable state securities laws may create liability on Subscriber's part or the part of the Company, and agrees not to assign, sell, pledge, transfer or otherwise dispose of the Units unless they are registered under the Securities Act and applicable state securities laws, or an opinion of counsel satisfactory to the Company is given to the Company that such registration is not required. Subscriber is aware that the Company will impress on the back of any certificate representing Units a legend substantially as follows:

- *These Units have not been registered under the Securities Act of 1933 or applicable state securities laws. They may not be offered or transferred by sale, assignment, pledge or otherwise unless (i) a registration statement for the Units under the Securities Act and applicable state securities laws is in effect or (ii) the Company has received an opinion of counsel satisfactory to the Company to the effect that such registration is not required.*

3.8 <u>Sophistication.</u> Subscriber possesses a sufficient degree of sophistication, knowledge, and experience in financial and business matters such that Subscriber is capable of evaluating the merits and risks of acquiring the Purchased Units.

3.9 <u>No Oral Representations.</u> No person representing the Company or purporting to do so has made any oral representation or warranty to Subscriber which is inconsistent with the information provided in writing to Subsrcriber. Subscriber agrees that Subsrciber has not relied

3

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

and shall not rely on any such representation or warranty in connection with any decision to acquire the Purchased Units.

3.10 <u>Execution on Behalf of Certain Entities.</u> If this Agreement is executed on behalf of a partnership, trust, corporation or other entity, the undersigned has been duly authorized to execute and deliver this Agreement and all other documents and instruments (if any) executed and delivered on behalf of such entity in connection with this subscription for the Purchased Units.

3.11 <u>Subject to Operating Agreement.</u> The Units subscribed for herein shall at all times be subject to the terms of the Operating Agreement.

3.12 <u>Confidentiality.</u> Subscriber hereby agrees, on behalf of Subscriber and Subsrciber's designated representative, if any, to keep confidential at all times any nonpublic information which such persons may acquire concerning the Company pursuant to this Agreement or otherwise. Nothing in this section (Confidentiality) shall be construed to impose a confidentiality obligation on such persons in connection with (a) any information already possessed by such persons which such persons acquired from sources other than the Company, or (b) any matter which is at the date of this Agreement, or thereafter becomes, public knowledge through no act or failure to act by the undersigned or designated representatives of Subscriber.

3.13 <u>Survival.</u>The foregoing representations and warranties of Subscriber shall survive the Closing. Subscriber represents and warrants that the representations, warranties and acknowledgements set forth above are true and accurate as of the date hereof and as of the Closing. If in any respect such representations and warranties shall not be true prior to the Closing, the undersigned will give prompt written notice of such fact to the Company.

## 4. Representation and Warranties of Company

4.1 <u>Organization and Good Standing.</u> The Company is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Michigan. The Company has the requisite corporate power and authority to own and operate its properties and assets, to carry on its business as presently conducted, to execute and deliver this Agreement, the Operating Agreement, and any other related agreements (the "Agreements"), to issue and sell the Purchased Units and to perform its obligations pursuant to the Agreements.

4.2 <u>Capitalization.</u> Immediately prior to the Closing, the authorized Units of the Company will consist of 8,500,000 shares of Series F Common Units, of which 8,500,000 shares are issued and outstanding and 1,500,000 shares of Series Seed Common Units, all of which are designated Series Seed and contemplated to be issued and outstanding upon the completion of the Series Seed funding round. The Series F Common Units and the Series Seed shall have the rights, preferences, privileges and restrictions set forth in the Operating Agreement.

4.3 <u>Authorization.</u> All corporate action on the part of the Company and unit holders necessary for the authorization, execution and delivery of the Agreements by the Company, the authorization, sale, issuance and delivery of the Purchased Units, and the performance of all of the Company's obligations under the Agreements has been taken or will be taken prior to the

4

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

Initial Closing. The Agreements, when executed and delivered by the Company, shall constitute valid and binding obligations of the Company. The Common Units and the Series Seed shall have the rights, preferences, privileges and restrictions set forth in the Operating Agreement.

### 5. General.

5.1 <u>Governing Law.</u>This Agreement will be construed in accordance with and governed by the laws of the State of Michigan, without giving effect to conflict of law principles.

5.2 <u>Successors and Assigns.</u> Except as otherwise expressly provided in this Agreement, this Agreement will be binding on, and will inure to the benefit of, the successors and permitted assigns of the parties to this Agreement. Nothing in this Agreement is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights or obligations under or by reason of this Agreement, except as expressly provided in this Agreement.

5.3 <u>Notices.</u> All notices and other communications required or permitted hereunder will be in writing and will be delivered by hand or sent by overnight courier, fax or e-mail to:

<u>If to the Company</u>:

**ACCURATE ACCREDITATION, LLC**

Fax: 248-434-4535

Attention: Accurate Accreditation Administrator


<u>If to the Subscriber</u>:

Name:

Address:

E-mail:


Each party may furnish an address substituting for the address given above by giving notice to the other parties in the manner prescribed by this Section 4.3. All notices and other communications will be deemed to have been given upon actual receipt by (or tender to and rejection by) the intended recipient or any other person at the specified address of the intended recipient.

5.4 <u>Severability.</u> In the event that any provision of this Agreement is held to be unenforceable under applicable law, this Agreement will continue in full force and effect without such provision and will be enforceable in accordance with its terms.

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

5.5 <u>Construction.</u> The titles of the sections of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement. Unless the context of this Agreement clearly requires otherwise: (a) references to the plural include the singular, the singular the plural, and the part the whole, (b) references to one gender include all genders, (c) "or" has the inclusive meaning frequently identified with the phrase "and/or," (d) "including" has the inclusive meaning frequently identified with the phrase "including but not limited to" or "including without limitation," and (e) references to "hereunder," "herein" or "hereof" relate to this Agreement as a whole. Any reference in this Agreement to any statute, rule, regulation or agreement, including this Agreement, shall be deemed to include such statute, rule, regulation or agreement as it may be modified, varied, amended or supplemented from time to time.

5.6 <u>Entire Agreement.</u> This Agreement embodies the entire agreementand understanding between the parties hereto with respect to the subject matter of this Agreement and supersedes all prior or contemporaneous agreements and understanding other than this Agreement relating to the subject matter hereof.

5.7 <u>Amendment and Waiver.</u> This Agreement may be amended only by a written agreement executed by the parties hereto. No provision of this Agreement may be waived except by a written document executed by the party entitled to the benefits of the provision. No waiver of a provision will be deemed to be or will constitute a waiver of any other provision of this Agreement. A waiver will be effective only in the specific instance and for the purpose for which it was given, and will not constitute a continuing waiver.

5.8 <u>Counterparts.</u> This Agreement may be in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one instrument.

IN WITNESS WHEREOF, the undersigned have executed this Subscription Agreement as of the date first written above.

## [SIGNATURES ON FOLLOWING PAGE]

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

## SIGNATURE PAGE TO ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

COMPANY (ACCURATE ACCREDITATION, LLC):

Signature: _____

Name: __Dr. Ahzam Afzal_____

Title: __CEO_____

Dated: __7-2-2019_____

SUBSCRIBER:

Signature: _____

Name: Dr. John Santa Ana

Dated: __01July2019_____

Investment Amount: __$50,000____

Number of Units:__50,000__(Representing _0.5_ % of outstanding equity of  Accurate Accreditation, LLC at time of Agreement)

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

THIS SUBSCRIPTION AGREEMENT (this **"Agreement"**) is entered into by and between ACCURATE ACCREDITATION, LLC, a Michigan limited liability company (the **"Company"**), and the undersigned Subscriber in the Company (**"Subscriber"**) as of October 29, 2019. All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to in the Operating Agreement provided herewith by and among the Managers and the Members identified therein (the **"Operating Agreement"**).

WHEREAS, the Company has been formed as a limited liability company under the laws of the State of Michigan;

WHEREAS, the existing Members and the Managers have set out fully in the Operating Agreement their respective rights, obligations and duties with respect to the Company and its assets; and

WHEREAS, Subscriber wishes to purchase from the Company, and the Company wishes to issue to Subscriber, membership interests in the Company in the form of a number of Series Seed units, each represented by a capital commitment in the amount of $1.00 (a **"Unit"**);

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained in this Agreement, the parties agree as follows:

**1. Subscription for Units.**

    1.1    <u>Agreement to Sell and Purchase.</u> Subscriber hereby agrees to purchase from the Company, and the Company hereby agrees to issue and sell to Subscriber, subject to Section 2.2 (Rejection of Subscription) of this Agreement, the number of Units set forth below Subscriber's signature on the signature page hereto (the **"Purchased Units"**), all subject to the terms and conditions set forth in this Agreement.

    1.2    <u>Consideration.</u> In consideration of the issuance and sale of the Purchased Units, Subscriber agrees to disburse an amount equivalent to $1.00 times the number of Purchased Units.

**2. Closing.**

    2.1    <u>Closing Date.</u> The Closing of the purchase and sale of the Units shall occur at a time, date, and place designated by the Company; However, in no event shall the Closing occur more than 90 days after the execution of this Agreement.

    2.2    <u>Rejection of Subscription.</u> At or before the Closing, the Company may, in its sole discretion and for any reason, elect not to accept the subscription of Subscriber, in whole or in part. If the Company rejects such subscription, the Company shall refund to Subscriber all funds submitted by Subscriber to the Company in connection with such rejected subscription.

1

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

2.3     Default. If Subscriber fails to perform Subscriber's obligations hereunder within five days after receipt of notice by the Company to Subscriber of such failure, the Company may, at its sole option: (a) if such failure occurs prior to the Closing, refuse to issue the Purchased Units to Subscriber; or (b) if such failure occurs after the Closing, result in the reversion of all rights, title and interest in the Units to the Company and a rescission of the transactions contemplated hereby.

2.4     Failure of Closing to Occur. The Company shall have no liability to Subscriber for (a) the failure of the Closing to occur or (b) its failure to issue the Purchased Units to Subscriber.

2.5     Obligations of Subscriber. At the Closing, Subscriber shall execute the Operating Agreement and such other documents as are deemed by the Company to be appropriate, advisable or necessary to consummate the transactions contemplated hereby and thereby.

2.6     Subscription Irrevocable. Except as provided under applicable state securities laws, this subscription is and shall be irrevocable on the part of Subscriber.

## 3. Representation and Warranties of Subscriber.

Subscriber hereby represents and warrants to the Company as follows:

3.1     No Conflicts. The execution and delivery of this Agreement do not, and the consummation of the transactions contemplated hereby will not, violate any terms of any material contractual restriction or commitment of any kind or character to which Subscriber is a party or by which Subscriber is bound.

3.2     Risk of Loss. Subscriber is able to bear the substantial economic risks of an investment in the Company and to sustain a complete loss of such investment. Subscriber recognizes that the acquisition of the Purchased Units involves a high degree of risk. Subscriber is cognizant of and understands all of the risks related to the purchase of the Units, including those set forth in Section 3.7 (Restrictions on Transfer) of this Agreement pertaining to transferability. Subscriber has adequate net worth and means of providing for Subscriber's current needs and possible personal contingencies and has no need for liquidity in this investment. Subscriber's commitment to investments which are not readily marketable is not disproportionate to Subscriber's net worth and Subscriber's acquisition of the Purchased Units will not cause Subscriber's overall commitment to such investments to become excessive.

3.3     Access. Subscriber acknowledges that all documents, records and books pertaining to this investment have been made available for inspection  by Subscriber, Subscriber's counsel, and Subscriber's accountants. Counsel and accountants for Subscriber, and Subscriber, have had the opportunity to obtain any

2

additional information necessary to verify the accuracy of the contents of the documents presented to them, and to confer with and to ask questions of, and receive answers from, representatives of the Company or persons authorized to act on its behalf concerning the terms and conditions of this investment and any additional information requested by Subscriber or Subscriber's representatives. In evaluating the suitability of this investment in the Company, Subscriber has not relied upon any representations or other information (whether oral or written) other than as set forth in any documents or answers to questions furnished by the Company. Subscriber is making this investment without being furnished any offering literature other than the documents or answers to questions described above.

       3.4    <u>Investment Intent.</u> The Purchased Units are being acquired by Subscriber for the account of Subscriber, for investment purposes only, and not with a view to, or in connection with, any resale or distribution thereof. Subscriber has no contract, undertaking, understanding, agreement or arrangement, formal or informal with any person or entity to sell, transfer or pledge to any person or entity all or any part of the Purchased Units, any interest therein or any rights thereto, and Subscriber has no present plans to enter into any such contract, undertaking, agreement or arrangement.

       3.5    <u>Reliance on Representations.</u> Subscriber understands that no federal or state agency has passed on or made any recommendation or endorsement of the Units. Subscriber further understands that the Company, in offering the Purchased Units for sale to Subscriber, is relying on the truth and accuracy of the representations, declarations, and warranties made by Subscriber herein and in the investor suitability questionnaire completed, executed and delivered by Subscriber to the Company contemporaneously herewith.

       3.6    <u>No Registration.</u> Subscriber acknowledges that, because the Units have not been registered under the Securities Act of 1933 (the **"Securities Act"**), and because the Company has no obligation to effect such registration, Subscriber shall continue to bear the economic risk of Subscriber's investment in the Purchased Units for an indefinite period.

       3.7    <u>Restrictions on Transfer.</u> Subscriber agrees that Subscriber will not sell or otherwise transfer, or cause to be sold or transferred, the Purchased Units other than in accordance with the terms and conditions of the Operating Agreement. It is understood that the Units cannot be liquidated easily, that no public or other market exists for the Units, and that no such market is expected to develop. Subscriber is aware that, because the Purchased Units have not been registered under the Securities Act or applicable state securities laws, any resale inconsistent with the Securities Act or applicable state securities laws may create liability on Subscriber's part or the part of the Company, and agrees not to assign, sell, pledge, transfer or otherwise dispose of the Units unless they are registered under the

3

**ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT**

Securities Act and applicable state securities laws, or an opinion of counsel satisfactory to the Company is given to the Company that such registration is not required. Subscriber is aware that the Company will impress on the back of any certificate representing Units a legend substantially as follows:

- *These Units have not been registered under the Securities Act of 1933 or applicable state securities laws. They may not be offered or transferred by sale, assignment, pledge or otherwise unless (i) a registration statement for the Units under the Securities Act and applicable state securities laws is in effect or (ii) the Company has received an opinion of counsel satisfactory to the Company to the effect that such registration is not required.*

3.8 <u>Sophistication.</u> Subscriber possesses a sufficient degree of sophistication, knowledge, and experience in financial and business matters such that Subscriber is capable of evaluating the merits and risks of acquiring the Purchased Units.

3.9 <u>No Oral Representations.</u> No person representing the Company or purporting to do so has made any oral representation or warranty to Subscriber which is inconsistent with the information provided in writing to Subscriber. Subscriber agrees that Subscriber has not relied and shall not rely on any such representation or warranty in connection with any decision to acquire the Purchased Units.

3.10 <u>Execution on Behalf of Certain Entities.</u> If this Agreement is executed on behalf of a partnership, trust, corporation or other entity, the undersigned has been duly authorized to execute and deliver this Agreement and all other documents and instruments (if any) executed and delivered on behalf of such entity in connection with this subscription for the Purchased Units.

3.11 <u>Subject to Operating Agreement.</u> The Units subscribed for herein shall at all times be subject to the terms of the Operating Agreement.

3.12 <u>Confidentiality.</u> Subscriber hereby agrees, on behalf of Subscriber and Subscriber's designated representative, if any, to keep confidential at all times any nonpublic information which such persons may acquire concerning the Company pursuant to this Agreement or otherwise. Nothing in this section (Confidentiality) shall be construed to impose a confidentiality obligation on such persons in connection with (a) any information already possessed by such persons which such persons acquired from sources other than the Company, or (b) any matter which is at the date of this Agreement, or thereafter becomes, public knowledge through no act or failure to act by the undersigned or designated representatives of Subscriber.

3.13 <u>Survival.</u>The foregoing representations and warranties of Subscriber shall survive the Closing. Subscriber represents and warrants that the representations, warranties and acknowledgements set forth above are true and accurate as of the date hereof and as of the Closing. If in any respect such representations and warranties shall not be true prior to the Closing, the undersigned will give prompt written notice of such fact to the Company.

**4. Representation and Warranties of Company**

4

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

4.1 <u>Organization and Good Standing.</u> The Company is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Michigan. The Company has the requisite corporate power and authority to own and operate its properties and assets, to carry on its business as presently conducted, to execute and deliver this Agreement, the Operating Agreement, and any other related agreements (the "Agreements"), to issue and sell the Purchased Units and to perform its obligations pursuant to the Agreements.

4.2 <u>Capitalization.</u> Immediately prior to the Closing, the authorized Units of the Company will consist of 8,500,000 shares of Series F Common Units, of which 8,500,000 shares are issued and outstanding or contemplated to be issued and outstanding and 1,500,000 shares of Series Seed Common Units, all of which are designated Series Seed and contemplated to be issued and outstanding upon the completion of the Series Seed funding round. The Series F Common Units and the Series Seed shall have the rights, preferences, privileges and restrictions set forth in the Operating Agreement.

4.3 <u>Authorization.</u> All corporate action on the part of the Company and unit holders necessary for the authorization, execution and delivery of the Agreements by the Company, the authorization, sale, issuance and delivery of the Purchased Units, and the performance of all of the Company's obligations under the Agreements has been taken or will be taken prior to the Initial Closing. The Agreements, when executed and delivered by the Company, shall constitute valid and binding obligations of the Company. The Common Units and the Series Seed shall have the rights, preferences, privileges and restrictions set forth in the Operating Agreement.

**5. General.**

5.1 <u>Governing Law.</u>This Agreement will be construed in accordance with and governed by the laws of the State of Michigan, without giving effect to conflict of law principles.

5.2 <u>Successors and Assigns.</u> Except as otherwise expressly provided in this Agreement, this Agreement will be binding on, and will inure to the benefit of, the successors and permitted assigns of the parties to this Agreement. Nothing in this Agreement is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights or obligations under or by reason of this Agreement, except as expressly provided in this Agreement.

5.3 <u>Notices.</u> All notices and other communications required or permitted hereunder will be in writing and will be delivered by hand or sent by overnight courier, fax or e-mail to:

<u>If to the Company:</u>

**ACCURATE ACCREDITATION, LLC**

Fax: 248-434-4535

Attention: Accurate Accreditation Administrator

5

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

<u>If to the Subscriber:</u>

Name:  Arvinder & Simrat Dhillon

Address: 29877 Telegraph Road, Suite 401. Southfield, MI 4-8039

E-mail: sim@mirehab.net

Each party may furnish an address substituting for the address given above by giving notice to the other parties in the manner prescribed by this Section 4.3. All notices and other communications will be deemed to have been given upon actual receipt by (or tender to and rejection by) the intended recipient or any other person at the specified address of the intended recipient.

5.4  <u>Severability.</u>  In the event that any provision of this Agreement is held to be unenforceable under applicable law, this Agreement will continue in full force and effect without such provision and will be enforceable in accordance with its terms.

5.5  <u>Construction.</u>  The titles of the sections of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement. Unless the context of this Agreement clearly requires otherwise: (a) references to the plural include the singular, the singular the plural, and the part the whole, (b) references to one gender include all genders, (c) "or" has the inclusive meaning frequently identified with the phrase "and/or," (d) "including" has the inclusive meaning frequently identified with the phrase "including but not limited to" or "including without limitation," and (e) references to "hereunder," "herein" or "hereof" relate to this Agreement as a whole. Any reference in this Agreement to any statute, rule, regulation or agreement, including this Agreement, shall be deemed to include such statute, rule, regulation or agreement as it may be modified, varied, amended or supplemented from time to time.

5.6  <u>Entire Agreement.</u>  This Agreement embodies the entire agreementand understanding between the parties hereto with respect to the subject matter of this Agreement and supersedes all prior or contemporaneous agreements and understanding other than this Agreement relating to the subject matter hereof.

5.7 <u>Amendment and Waiver.</u> This Agreement may be amended only by a written agreement executed by the parties hereto. No provision of this Agreement may be waived except by a written document executed by the party entitled to the benefits of the provision. No waiver of a provision will be deemed to be or will constitute a waiver of any other provision of this Agreement. A waiver will be effective only in the specific instance and for the purpose for which it was given, and will not constitute a continuing waiver.

5.8  <u>Counterparts.</u>  This Agreement may be in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one instrument.

IN WITNESS WHEREOF, the undersigned have executed this Subscription Agreement as of the date first written above.

6

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

**[SIGNATURES ON FOLLOWING PAGE]**

### SIGNATURE PAGE TO ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

COMPANY (ACCURATE ACCREDITATION, LLC):

Signature: _____

Name: __Ahzam Afzal_____

Title: __CEO_____

Dated: ___10-29-19_____

SUBSCRIBER:

Signature: _____

Name: Arvinder & Simrat Dhillon

Dated: ____10-29-19_____

Investment Amount: ___**$500,000**____

Number of Units: **500,000** **(Representing 5% of outstanding equity of Accurate Accreditation, LLC at time of Agreement)**

7



## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

THIS SUBSCRIPTION AGREEMENT (this "**Agreement**") is entered into by and between ACCURATE ACCREDITATION, LLC, a Michigan limited liability company (the "**Company**"), and the undersigned Subscriber in the Company ("**Subscriber**") as of February 14, 2020. All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to in the Operating Agreement provided herewith by and among the Managers and the Members identified therein (the "**Operating Agreement**").

WHEREAS, the Company has been formed as a limited liability company under the laws of the State of Michigan;

WHEREAS, the existing Members and the Managers have set out fully in the Operating Agreement their respective rights, obligations and duties with respect to the Company and its assets; and

WHEREAS, Subscriber wishes to purchase from the Company, and the Company wishes to issue to Subscriber, membership interests in the Company in the form of a number of Series Seed units, each represented by a capital commitment in the amount of $1.00 (a "**Unit**");

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained in this Agreement, the parties agree as follows:

**1. Subscription for Units.**

      1.1    <u>Agreement to Sell and Purchase.</u> Subscriber hereby agrees to purchase from the Company, and the Company hereby agrees to issue and sell to Subscriber, subject to Section 2.2 (Rejection of Subscription) of this Agreement, the number of Units set forth below Subscriber's signature on the signature page hereto (the "**Purchased Units**"), all subject to the terms and conditions set forth in this Agreement.

      1.2    <u>Consideration.</u> In consideration of the issuance and sale of the Purchased Units, Subscriber agrees to disburse an amount equivalent to $1.00 times the number of Purchased Units.

**2. Closing.**

      2.1    <u>Closing Date.</u> The Closing of the purchase and sale of the Units shall occur at a time, date, and place designated by the Company; However, in no event shall the Closing occur more than 90 days after the execution of this Agreement.

      2.2    <u>Rejection of Subscription.</u> At or before the Closing, the Company may, in its sole discretion and for any reason, elect not to accept the subscription of Subscriber, in whole or in part. If the Company rejects such subscription, the Company shall refund to Subscriber all funds submitted by Subscriber to the Company in connection with such rejected subscription.

1

**ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT**

2.3 <u>Default.</u> If Subscriber fails to perform Subscriber's obligations hereunder within five days after receipt of notice by the Company to Subscriber of such failure, the Company may, at its sole option: (a) if such failure occurs prior to the Closing, refuse to issue the Purchased Units to Subscriber; or (b) if such failure occurs after the Closing, result in the reversion of all rights, title and interest in the Units to the Company and a rescission of the transactions contemplated hereby.

2.4 <u>Failure of Closing to Occur.</u> The Company shall have no liability to Subscriber for (a) the failure of the Closing to occur or (b) its failure to issue the Purchased Units to Subscriber.

2.5 <u>Obligations of Subscriber.</u> At the Closing, Subscriber shall execute the Operating Agreement and such other documents as are deemed by the Company to be appropriate, advisable or necessary to consummate the transactions contemplated hereby and thereby.

2.6 <u>Subscription Irrevocable.</u> Except as provided under applicable state securities laws, this subscription is and shall be irrevocable on the part of Subscriber.

**3. Representation and Warranties of Subscriber.**

Subscriber hereby represents and warrants to the Company as follows:

3.1 <u>No Conflicts.</u> The execution and delivery of this Agreement do not, and the consummation of the transactions contemplated hereby will not, violate any terms of any material contractual restriction or commitment of any kind or character to which Subscriber is a party or by which Subscriber is bound.

3.2 <u>Risk of Loss.</u> Subscriber is able to bear the substantial economic risks of an investment in the Company and to sustain a complete loss of such investment. Subscriber recognizes that the acquisition of the Purchased Units involves a high degree of risk. Subscriber is cognizant of and understands all of the risks related to the purchase of the Units, including those set forth in Section 3.7 (Restrictions on Transfer) of this Agreement pertaining to transferability. Subscriber has adequate net worth and means of providing for Subscriber's current needs and possible personal contingencies and has no need for liquidity in this investment. Subscriber's commitment to investments which are not readily marketable is not disproportionate to Subscriber's net worth and Subscriber's acquisition of the Purchased Units will not cause Subscriber's overall commitment to such investments to become excessive.

3.3 <u>Access.</u> Subscriber acknowledges that all documents, records and books pertaining to this investment have been made available for inspection by Subscriber, Subscriber's counsel, and Subscriber's accountants. Counsel and accountants for Subscriber, and Subscriber, have had the opportunity to obtain any

2

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

additional information necessary to verify the accuracy of the contents of the documents presented to them, and to confer with and to ask questions of, and receive answers from, representatives of the Company or persons authorized to act on its behalf concerning the terms and conditions of this investment and any additional information requested by Subscriber or Subscriber's representatives. In evaluating the suitability of this investment in the Company, Subscriber has not relied upon any representations or other information (whether oral or written) other than as set forth in any documents or answers to questions furnished by the Company. Subscriber is making this investment without being furnished any offering literature other than the documents or answers to questions described above.

3.4    Investment Intent. The Purchased Units are being acquired by Subscriber for the account of Subscriber, for investment purposes only, and not with a view to, or in connection with, any resale or distribution thereof. Subscriber has no contract, undertaking, understanding, agreement or arrangement, formal or informal with any person or entity to sell, transfer or pledge to any person or entity all or any part of the Purchased Units, any interest therein or any rights thereto, and Subscriber has no present plans to enter into any such contract, undertaking, agreement or arrangement.

3.5    Reliance on Representations. Subscriber understands that no federal or state agency has passed on or made any recommendation or endorsement of the Units. Subscriber further understands that the Company, in offering the Purchased Units for sale to Subscriber, is relying on the truth and accuracy of the representations, declarations, and warranties made by Subscriber herein and in the investor suitability questionnaire completed, executed and delivered by Subscriber to the Company contemporaneously herewith.

3.6    No Registration. Subscriber acknowledges that, because the Units have not been registered under the Securities Act of 1933 (the "**Securities Act**"), and because the Company has no obligation to effect such registration, Subscriber shall continue to bear the economic risk of Subscriber's investment in the Purchased Units for an indefinite period.

3.7    Restrictions on Transfer. Subscriber agrees that Subscriber will not sell or otherwise transfer, or cause to be sold or transferred, the Purchased Units other than in accordance with the terms and conditions of the Operating Agreement. It is understood that the Units cannot be liquidated easily, that no public or other market exists for the Units, and that no such market is expected to develop. Subscriber is aware that, because the Purchased Units have not been registered under the Securities Act or applicable state securities laws, any resale inconsistent with the Securities Act or applicable state securities laws may create liability on Subscriber's part or the part of the Company, and agrees not to assign, sell, pledge, transfer or otherwise dispose of the Units unless they are registered under the Securities Act and applicable state securities laws, or an opinion of counsel

3

<u>ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT</u>

satisfactory to the Company is given to the Company that such registration is not required. Subscriber is aware that the Company will impress on the back of any certificate representing Units a legend substantially as follows:

- *These Units have not been registered under the Securities Act of 1933 or applicable state securities laws. They may not be offered or transferred by sale, assignment, pledge or otherwise unless (i) a registration statement for the Units under the Securities Act and applicable state securities laws is in effect or (ii) the Company has received an opinion of counsel satisfactory to the Company to the effect that such registration is not required.*

3.8 <u>Sophistication.</u> Subscriber possesses a sufficient degree of sophistication, knowledge, and experience in financial and business matters such that Subscriber is capable of evaluating the merits and risks of acquiring the Purchased Units.

3.9 <u>No Oral Representations.</u> No person representing the Company or purporting to do so has made any oral representation or warranty to Subscriber which is inconsistent with the information provided in writing to Subscriber. Subscriber agrees that Subscriber has not relied and shall not rely on any such representation or warranty in connection with any decision to acquire the Purchased Units.

3.10 <u>Execution on Behalf of Certain Entities.</u> If this Agreement is executed on behalf of a partnership, trust, corporation or other entity, the undersigned has been duly authorized to execute and deliver this Agreement and all other documents and instruments (if any) executed and delivered on behalf of such entity in connection with this subscription for the Purchased Units.

3.11 <u>Subject to Operating Agreement.</u> The Units subscribed for herein shall at all times be subject to the terms of the Operating Agreement.

3.12 <u>Confidentiality.</u> Subscriber hereby agrees, on behalf of Subscriber and Subscriber's designated representative, if any, to keep confidential at all times any nonpublic information which such persons may acquire concerning the Company pursuant to this Agreement or otherwise. Nothing in this section (Confidentiality) shall be construed to impose a confidentiality obligation on such persons in connection with (a) any information already possessed by such persons which such persons acquired from sources other than the Company, or (b) any matter which is at the date of this Agreement, or thereafter becomes, public knowledge through no act or failure to act by the undersigned or designated representatives of Subscriber.

3.13 <u>Survival.</u> The foregoing representations and warranties of Subscriber shall survive the Closing. Subscriber represents and warrants that the representations, warranties and acknowledgements set forth above are true and accurate as of the date hereof and as of the Closing. If in any respect such representations and warranties shall not be true prior to the Closing, the undersigned will give prompt written notice of such fact to the Company.

**4. Representation and Warranties of Company**

4.1 <u>Organization and Good Standing.</u> The Company is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Michigan. The

## ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT

Company has the requisite corporate power and authority to own and operate its properties and assets, to carry on its business as presently conducted, to execute and deliver this Agreement, the Operating Agreement, and any other related agreements (the "Agreements"), to issue and sell the Purchased Units and to perform its obligations pursuant to the Agreements.

4.2 <u>Capitalization.</u> Immediately prior to the Closing, the authorized Units of the Company will consist of 8,500,000 shares of Series F Common Units, of which 8,500,000 shares are issued and outstanding or contemplated to be issued and outstanding and 1,500,000 shares of Series Seed Common Units, all of which are designated Series Seed and contemplated to be issued and outstanding upon the completion of the Series Seed funding round. The Series F Common Units and the Series Seed shall have the rights, preferences, privileges and restrictions set forth in the Operating Agreement.

4.3 <u>Authorization.</u> All corporate action on the part of the Company and unit holders necessary for the authorization, execution and delivery of the Agreements by the Company, the authorization, sale, issuance and delivery of the Purchased Units, and the performance of all of the Company's obligations under the Agreements has been taken or will be taken prior to the Initial Closing. The Agreements, when executed and delivered by the Company, shall constitute valid and binding obligations of the Company. The Common Units and the Series Seed shall have the rights, preferences, privileges and restrictions set forth in the Operating Agreement.

**5. General.**

5.1 <u>Governing Law.</u>This Agreement will be construed in accordance with and governed by the laws of the State of Michigan, without giving effect to conflict of law principles.

5.2 <u>Successors and Assigns.</u> Except as otherwise expressly provided in this Agreement, this Agreement will be binding on, and will inure to the benefit of, the successors and permitted assigns of the parties to this Agreement. Nothing in this Agreement is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights or obligations under or by reason of this Agreement, except as expressly provided in this Agreement.

5.3 <u>Notices.</u> All notices and other communications required or permitted hereunder will be in writing and will be delivered by hand or sent by overnight courier, fax or e-mail to:

If to the Company:

**ACCURATE ACCREDITATION, LLC**

Fax: 248-434-4535

Attention: Accurate Accreditation Administrator

If to the Subscriber:

Name: Lucia Zamorano Revocable Trust dated January 21, 1991

## <u>ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT</u>

Address: 2004 Hazel Street, Birmingham, MI 48009

E-mail: lzamorano@luciazamorano.com

Each party may furnish an address substituting for the address given above by giving notice to the other parties in the manner prescribed by this Section 4.3. All notices and other communications will be deemed to have been given upon actual receipt by (or tender to and rejection by) the intended recipient or any other person at the specified address of the intended recipient.

5.4 <u>Severability.</u> In the event that any provision of this Agreement is held to be unenforceable under applicable law, this Agreement will continue in full force and effect without such provision and will be enforceable in accordance with its terms.

5.5 <u>Construction.</u> The titles of the sections of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement. Unless the context of this Agreement clearly requires otherwise: (a) references to the plural include the singular, the singular the plural, and the part the whole, (b) references to one gender include all genders, (c) "or" has the inclusive meaning frequently identified with the phrase "and/or," (d) "including" has the inclusive meaning frequently identified with the phrase "including but not limited to" or "including without limitation," and (e) references to "hereunder," "herein" or "hereof" relate to this Agreement as a whole. Any reference in this Agreement to any statute, rule, regulation or agreement, including this Agreement, shall be deemed to include such statute, rule, regulation or agreement as it may be modified, varied, amended or supplemented from time to time.

5.6 <u>Entire Agreement.</u> This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter of this Agreement and supersedes all prior or contemporaneous agreements and understanding other than this Agreement relating to the subject matter hereof.

5.7 <u>Amendment and Waiver.</u> This Agreement may be amended only by a written agreement executed by the parties hereto. No provision of this Agreement may be waived except by a written document executed by the party entitled to the benefits of the provision. No waiver of a provision will be deemed to be or will constitute a waiver of any other provision of this Agreement. A waiver will be effective only in the specific instance and for the purpose for which it was given, and will not constitute a continuing waiver.

5.8 <u>Counterparts.</u> This Agreement may be in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one instrument.

IN WITNESS WHEREOF, the undersigned have executed this Subscription Agreement as of the date first written above.

## [SIGNATURES ON FOLLOWING PAGE]

**ACCURATE ACCREDITATION, LLC SERIES SEED SUBSCRIPTION AGREEMENT**

**SIGNATURE PAGE TO ACCURATE ACCREDITATION, LLC SERIES SEED
SUBSCRIPTION AGREEMENT**

COMPANY (ACCURATE ACCREDITATION, LLC):

Signature: _____

Name: __Ahzam Afzal_____

Title: __CEO_____

Dated: __2-14-2020_____

SUBSCRIBER: Lucia Zamorano Revocable Trust

dated January 21, 1991

Signature: _____

Trustee: Lucia Zamorano, M.D.

Dated: __2 | 17 | 2020_____

Investment Amount: ___**$100,000**_____

Number of Units: __**100,000**__ (Representing 1.0% of outstanding equity of  Accurate
Accreditation, LLC at time of Agreement)

7

## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
## CIVIL DIVISION

HELZER GROUP, LLC, a Florida limited
liability company, d/b/a Medconsultants,

      Plaintiff,

v.

ACCURATE ACCREDITATION, LLC, A
Michigan limited liability company;
AHZAM AFZAL, individually; SHAAHID
AFZAL, individually; LISA WHITLATCH,
individually; HAMZA OSTO, individually;
and PARAS PANCHOLI, individually,

      Defendant.

_____/

Case No. **20CA005776**
Division **E**

## SUMMONS

THE STATE OF FLORIDA:
TO EACH SHERIFF OF THE STATE:

**YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint in this action
on:

Defendant:   Lisa Whitlatch
             1975 E. Leonard Road
             Leonard, MI 48367

### IMPORTANT

Each Defendant is **required** to serve written defenses to the Complaint on:

Michael V. Hargett, Esquire
Florida Bar No. 44097
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
Telephone:  (813) 253-2020
Primary Emails:    mhargett@barnettbolt.com
Secondary Emails:  dmarsh@barnettbolt.com
                    litigation@barnettbolt.com

**20CA005776
DIV. E**

within 20 days after service of this Summons on that defendant, exclusive of the day of service, **and** to file the original of the defenses with the Clerk of this Court at 419 Pierce Street, Tampa, Florida 33602, either before service on plaintiff or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

DATED:_____July 22nd, 2020_____

**PAT FRANK**
Clerk of the Circuit Court
419 Pierce Street
Tampa, FL 33602



(Seal)

BY: _Elgin Welch_____
DEPUTY CLERK

## REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Court's ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

2

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica. Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l.assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d.autres obligations juridiques et vous pouvez requerir les services immediats d.un avocat. Si vous ne connaissez pas d.avocat, vous pourriez telephoner a un service de reference d.avocats ou a un bureau d.assistance juridique (figurant a l.annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Michael V. Hargett, Esquire
Florida Bar No. 44097
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
Telephone:  (813) 253-2020
Primary Emails:     mhargett@barnettbolt.com
Secondary Emails:  dmarsh@barnettbolt.com
                   litigation@barnettbolt.com

3

Filing # 110489540 E-Filed 07/20/2020 02:35:45 PM

# IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
### CIVIL DIVISION

HELZER GROUP, LLC, a Florida limited
liability company, d/b/a Medconsultants,

      Plaintiff,

v.                                                                Case No. **20CA005776**
                                                                 Division **E**

ACCURATE ACCREDITATION, LLC, A
Michigan   limited   liability   company;
AHZAM AFZAL, individually; SHAAHID
AFZAL, individually; LISA WHITLATCH,
individually; HAMZA OSTO, individually;
and PARAS PANCHOLI, individually,

      Defendant.

_____/

## <u>SUMMONS</u>

THE STATE OF FLORIDA:
TO EACH SHERIFF OF THE STATE:

**YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint in this action
on:

Defendant:    Ahzam Afzal
               30300 Telegraph Road, Suite 350
               Bingham Farms, MI 48025.

## IMPORTANT

Each Defendant is **required** to serve written defenses to the Complaint on:

Michael V. Hargett, Esquire
Florida Bar No. 44097
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
Telephone:  (813) 253-2020
Primary Emails:    mhargett@barnettbolt.com
Secondary Emails:  dmarsh@barnettbolt.com
                     litigation@barnettbolt.com

within 20 days after service of this Summons on that defendant, exclusive of the day of service, **and** to file the original of the defenses with the Clerk of this Court at 419 Pierce Street, Tampa, Florida 33602, either before service on plaintiff or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

DATED: _____July 22nd, 2020_____

PAT FRANK
Clerk of the Circuit Court
419 Pierce Street
Tampa, FL 33602



(Seal)

BY: Elgin Welch
DEPUTY CLERK

## REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Court's ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

**IMPORTANT**

2

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

### IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica. Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

### IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l.assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d.autres obligations juridiques et vous pouvez requerir les services immediats d.un avocat. Si vous ne connaissez pas d.avocat, vous pourriez telephoner a un service de reference d.avocats ou a un bureau d.assistance juridique (figurant a l.annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Michael V. Hargett, Esquire
Florida Bar No. 44097
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
Telephone:  (813) 253-2020
Primary Emails:     mhargett@barnettbolt.com
Secondary Emails:  dmarsh@barnettbolt.com
                   litigation@barnettbolt.com

3

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT**
**IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**
**CIVIL DIVISION**

HELZER GROUP, LLC, a Florida limited
liability company, d/b/a Medconsultants,

      Plaintiff,

v.

ACCURATE ACCREDITATION, LLC, A
Michigan limited liability company;
AHZAM AFZAL, individually; SHAAHID
AFZAL, individually; LISA WHITLATCH,
individually; HAMZA OSTO, individually;
and PARAS PANCHOLI, individually,

      Defendant.

Case No. **20CA005776**
Division **E**

_____/

## SUMMONS

THE STATE OF FLORIDA:
TO EACH SHERIFF OF THE STATE:

**YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint in this action
on:

Defendant:   ACCURATE ACCREDITATION, LLC
             by serving its Registered Agent, Hamza Osto
             30300 Telegraph Road, Suite 350
             Bingham Farms, MI 48025.

## IMPORTANT

Each Defendant is **required** to serve written defenses to the Complaint on:

Michael V. Hargett, Esquire
Florida Bar No. 44097
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
Telephone:  (813) 253-2020
Primary Emails:   mhargett@barnettbolt.com
Secondary Emails:  dmarsh@barnettbolt.com
                   litigation@barnettbolt.com

within 20 days after service of this Summons on that defendant, exclusive of the day of service, **and** to file the original of the defenses with the Clerk of this Court at 419 Pierce Street, Tampa, Florida 33602, either before service on plaintiff or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

DATED: _____July 22nd, 2020_____

**PAT FRANK**
Clerk of the Circuit Court
419 Pierce Street
Tampa, FL 33602



(Seal)

BY: _____
DEPUTY CLERK

## REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Court's ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

2

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica. Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l.assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d.autres obligations juridiques et vous pouvez requerir les services immediats d.un avocat. Si vous ne connaissez pas d.avocat, vous pourriez telephoner a un service de reference d.avocats ou a un bureau d.assistance juridique (figurant a l.annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Michael V. Hargett, Esquire
Florida Bar No. 44097
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
Telephone:  (813) 253-2020
Primary Emails:     mhargett@barnettbolt.com
Secondary Emails:  dmarsh@barnettbolt.com
                   litigation@barnettbolt.com

3

# IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
### CIVIL DIVISION

HELZER GROUP, LLC, a Florida limited
liability company, d/b/a Medconsultants,

      Plaintiff,

v.

ACCURATE ACCREDITATION, LLC, A
Michigan limited liability company;
AHZAM AFZAL, individually; SHAAHID
AFZAL, individually; LISA WHITLATCH,
individually; HAMZA OSTO, individually;
and PARAS PANCHOLI, individually,

      Defendant.

_____/

Case No. **20CA005776**
Division **E**

## SUMMONS

THE STATE OF FLORIDA:
TO EACH SHERIFF OF THE STATE:

**YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint in this action
on:

Defendant:   Hamza Osto
             30300 Telegraph Road, Suite 350
             Bingham Farms, MI 48025.

## IMPORTANT

Each Defendant is **required** to serve written defenses to the Complaint on:

Michael V. Hargett, Esquire
Florida Bar No. 44097
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
Telephone:  (813) 253-2020
Primary Emails:    mhargett@barnettbolt.com
Secondary Emails:  dmarsh@barnettbolt.com
                     litigation@barnettbolt.com

within 20 days after service of this Summons on that defendant, exclusive of the day of service, **and** to file the original of the defenses with the Clerk of this Court at 419 Pierce Street, Tampa, Florida 33602, either before service on plaintiff or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

DATED: _____July 22nd, 2020_____

**PAT FRANK**
Clerk of the Circuit Court
419 Pierce Street
Tampa, FL 33602



(Seal)

BY: _Elgin Welch_
DEPUTY CLERK

## REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Court's ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

**IMPORTANT**

2

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

### IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica. Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

### IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l.assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d.autres obligations juridiques et vous pouvez requerir les services immediats d.un avocat. Si vous ne connaissez pas d.avocat, vous pourriez telephoner a un service de reference d.avocats ou a un bureau d.assistance juridique (figurant a l.annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Michael V. Hargett, Esquire
Florida Bar No. 44097
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
Telephone:  (813) 253-2020
Primary Emails:      mhargett@barnettbolt.com
Secondary Emails:  dmarsh@barnettbolt.com
                             litigation@barnettbolt.com

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION**

HELZER GROUP, LLC, a Florida limited
liability company, d/b/a Medconsultants,

     Plaintiff,

v.

ACCURATE ACCREDITATION, LLC, A
Michigan limited liability company;
AHZAM AFZAL, individually; SHAAHID
AFZAL, individually; LISA WHITLATCH,
individually; HAMZA OSTO, individually;
and PARAS PANCHOLI, individually,

     Defendant.

_____/

Case No. **20CA005776**
Division **E**

## SUMMONS

THE STATE OF FLORIDA:
TO EACH SHERIFF OF THE STATE:

**YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint in this action
on:

Defendant:   Shaahid Afzal
            30300 Telegraph Road, Suite 350
            Bingham Farms, MI 48025

### IMPORTANT

Each Defendant is **required** to serve written defenses to the Complaint on:

Michael V. Hargett, Esquire
Florida Bar No. 44097
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
Telephone:  (813) 253-2020
Primary Emails:    mhargett@barnettbolt.com
Secondary Emails:  dmarsh@barnettbolt.com
                   litigation@barnettbolt.com

within 20 days after service of this Summons on that defendant, exclusive of the day of service, **and** to file the original of the defenses with the Clerk of this Court at 419 Pierce Street, Tampa, Florida 33602, either before service on plaintiff or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

DATED:_____July 22nd, 2020_____

**PAT FRANK**
Clerk of the Circuit Court
419 Pierce Street
Tampa, FL 33602



(Seal)

BY:_Elgin Welch_____
DEPUTY CLERK

### REQUESTS FOR ACCOMMODATIONS BY PERSONS WITH DISABILITIES

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Court's ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs St., Room 604, Tampa, Florida 33602, (813) 272-7040, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica. Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l.assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d.autres obligations juridiques et vous pouvez requerir les services immediats d.un avocat. Si vous ne connaissez pas d.avocat, vous pourriez telephoner a un service de reference d.avocats ou a un bureau d.assistance juridique (figurant a l.annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Michael V. Hargett, Esquire
Florida Bar No. 44097
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
Telephone:  (813) 253-2020
Primary Emails:    mhargett@barnettbolt.com
Secondary Emails:  dmarsh@barnettbolt.com
                   litigation@barnettbolt.com

3